1  Stephen M. Doniger (SBN 179314)
2  stephen@donigerlawfirm.com
   Scott A. Burroughs (SBN 235718)
3  scott@donigerlawfirm.com
4  David R. Shein (SBN 230870)
   david@donigerlawfirm.com
5  DONIGER / BURROUGHS APC
6  603 Rose Avenue
   Venice, California 90291
7  Telephone: (310) 590-1820
8
   Attorneys for Plaintiff RATT
9
10                    **UNITED STATES DISTRICT COURT**
11                    **CENTRAL DISTRICT OF CALIFORNIA**
12
13 | RATT, a California General Partnership, | CASE NO. |
14 | | **COMPLAINT FOR:** |
15 | Plaintiff, | 1. **BREACH OF CONTRACT AND DEMAND FOR ACCOUNTING** |
16 | v. | 2. **TRADEMARK COUNTERFEITING AND FALSE ADVERTISING** |
17 | ROBERT JOHN BLOTZER, an individual; WBS, INC., a California Corporation; JOHN DOMAGALL, an individual; ARM ENTERTAINMENT, INC., a Corporation of unknown origin; MICHELLE DIJARES REILEY, an individual; and DOES 1 – 10 inclusive, | 3. **TRADEMARK INFRINGEMENT** |
18 | | 4. **FEDERAL UNFAIR COMPETITION** |
19 | | 5. **CONTRIBUTORY TRADEMARK INFRINGEMENT** |
20 | Defendants. | 6. **VICARIOUS TRADEMARK INFRINGEMENT** |
21 | | 7. **DECLARATORY RELIEF** |
22 | | **JURY TRIAL DEMANDED** |

26    Plaintiff RATT, by and through its undersigned attorneys, complains and
27 allege against defendants, and each of them, as follows:
28

                                    1
                                **COMPLAINT**

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to Sections 37 and 39 of the Lanham Act (15 U.S.C. §§ 1119 and 1121), 28 U.S.C. §2201 (declaratory judgment act) and 28 U.S.C. §§1331, 1332, and 1338, and has supplemental jurisdiction over the related State claims pursuant to 28 U.S.C. § 1367. Plaintiff's claims are predicated upon the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq., 28 U.S.C. §2201 (declaratory judgment act) and substantial and related claims under the statutory and common law of the State of California.

2. The Court has personal jurisdiction over Defendants, each of whom resides in and/or does business in the State of California and this judicial district; Defendants purposefully availed themselves of the privileges of conducting business in the State of California and this judicial district; Defendants regularly conduct business within the State of California and this judicial district; and Plaintiff's causes of action arise from Defendants' activities in the State of California and this judicial district.

3. Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b), because Defendants are subject to personal jurisdiction within this judicial district, and the events giving rise to these claims occurred within this judicial district.

**THE PARTIES**

4. Plaintiff is a California Limited Partnership comprised of residents of this judicial district and is doing business in Los Angeles County, California (hereinafter "the Partnership").

5. Upon information and belief, defendant ROBERT JOHN BLOTZER ("BLOTZER") is an individual residing at 28026 Forst Court, Castaic, California 91384 and is and was doing business in this district.

2
COMPLAINT

6. Upon information and belief, defendant WBS, INC. ("WBS") is a corporation organized and existing under the laws of the state of California with a principal place of business at 5328 Alhama Drive, Woodland Hills, California 01364 and is doing business in and with this district.

7. Upon information and belief, defendant JOHN DOMAGALL ("DOMGALL") is an individual residing in St. Paul, Minnesota and is and was doing business in and through Defendant ARM ENTERTAINMENT, INC. ("ARM") located at 1257 Arcade Street, St. Paul, Minnesota 55106, as the booking agents for a band that has toured without authorization under the name RATT and is and was doing business in this district, including by promoting and marketing the unauthorized band performing as RATT.

8. Upon information and belief, defendant MICHELLE DIJARES REILEY ("REILEY") is an individual residing in Las Vegas, NV and is and was doing business in this district, including as social media manager and publicist for a band that purports to be RATT.

9. Upon information and belief, Defendants DOES 1-10, inclusive, are other parties not yet identified who have infringed the RATT trademarks, engaged in unfair competition, or engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual or otherwise, of Defendants 1 through 10, inclusive, are presently unknown to Plaintiff, who therefore sue said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

10. Upon information and belief, at all times relevant hereto each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and

circumstances, including, but not limited to, full knowledge of each and every violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

## THE RATT TRADEMARKS

11. In 1983 RATT's five members—Robbinson Lantz Crosby ("Crosby"), Stephen E. Pearcy ("Pearcy"), Juan Carlos Croucier ("Croucier"), Warren DeMartini ("DeMartini"), and BLOTZER—formed a partnership called "Ratt" through which their band would operate. That partnership was formalized in a written partnership agreement on June 11, 1985 (the "Agreement").

12. Per the Agreement the primary purpose of the Partnership is to engage in, inter alia, the music and personal appearance business and any all other fields of the entertainment and leisure times industries, which includes merchandising.

13. Under the Agreement, each member of the RATT Partnership owned an equal 20% share in the partnership, including in the RATT trademarks.

14. On February 18, 1985 and October 29, 1985, respectively, the word Marks and stylized design Marks for the Marks were registered with the United States Patent and Trademark Office by the Partnership, resulting in registration numbers 1383345, 1383344, 1368246, and 1368245, respectively (the "Marks").

15. Since at least the 1984, when the Band started playing widely, and up to the present, the Marks have been extensively promoted and developed.

16. At no point did the Partnership transfer its rights in the Marks to any other person or entity. Notably, there was a defective attempt by some partners to transfer the trademarks to WBS, Inc., but that transfer was without the knowledge, let alone approval, of all Partners as has been judicially determined in, *inter alia*, *WBS, Inc. v. Juan Croucier et al.*, Case 2:15-cv-07251-DDP-JC.

17. The Agreement also provides that a Partner could be expelled with the unanimous consent of all other Partners.

4
COMPLAINT

18. In late 1991 or early 1992, Crosby (now deceased) was expelled from the Partnership by the unanimous vote of the other Partners.

19. In November of 2016, BLOTZER was expelled from the Partnership by the unanimous vote of the other Partners. Blotzer was provided a copy of the resolution of expulsion and advised (through his attorney) that pursuant to Section 11.3 of the Partnership Agreement, Mr. Blotzer as "an Ex-Partner under… Article XI shall have no ownership right whatsoever with respect to the Name 'RATT' or Marks except only to refer to himself as a 'former member of Ratt.'"

## DEFENDANTS' WRONGFUL ACTS

20. Between 2012 and 2014 Messrs. Pearcy, DeMartini, Croucier and BLOTZER completed the last tour as RATT. Following that tour, BLOTZER put together a RATT tribute band and began touring as "Bobby Blotzer's Rat Experience."

21. In 2015 BLOTZER orchestrated a takeover of WBS, which purported to own the RATT Trademarks. He then claimed the exclusive right to tour as RATT and renamed his cover band "RATT." He also used WBS to sue Mr. Croucier for trademark infringement in an action styled *WBS, Inc. v. Juan Croucier et al.* (the "Croucier Action"), Case 2:15-cv-07251-DDP-JC.

22. On information and belief, commencing on or about September of 2015 BLOTZER performed dozens of RATT concerts without any of the other RATT partners and sold RATT merchandise (including t-shirts) all while he was a partner in the Partnership.

23. Per paragraph 5.4 of the Partnership Agreement, "[n]o Partner shall be entitled to any salary or other compensation for services to the Partnership." Rather, "the profits and losses of the Partnership shall be allocated to the Partners in accordance with their interests in the Partnership" pursuant to 4.9. Yet BLOTZER has failed and refused to provide any accounting to the Partnership for the profits from the shows he performed as RATT or for RATT merchandise.

24. On November 8, 2016, summary judgment was granted against WBS, Inc. in the Croucier Action, with a finding that the Marks were never properly transferred to WBS from the Partnership and thus WBS could not claim ownership of those Marks.

25. On March 5, 2018, summary judgment was granted against WBS in another case it brought, styled *WBS, Inc. v. Stephen Pearcy, et al.*, Case 2:16-cv-03495-DDP-JC (the "Pearcy Action"), again finding that the RATT Marks were never properly transferred to WBS from the Partnership.

26. In November 2016, the other RATT Partners unanimously agreed to expel BLOTZER from the Partnership. Under the Agreement, an expelled partner has no further rights in the Marks and may only refer to himself as "formerly of Ratt."

27. Despite having no rights in the Marks, BLOTZER and WBS continued to tour and promote BLOTZER's cover band as RATT and on information and belief, continued to sell and/or cause RATT merchandise to be sold.

28. DOMAGALL and ARM actively promoted and booked the unauthorized BLOTZER-version of RATT despite actual knowledge that the Partnership is the owner of the Marks, that said ownership has been judicially determined, and that he was promoting the band in violation of the Partnership's rights.

29. Plaintiff is further informed and believes that REILEY actively promoted the unauthorized BLOTZER-version of RATT through social media and other publicist services despite actual knowledge that the Partnership is the owner of the Marks, that said ownership has been judicially determined, and that she was promoting the band in violation of the Partnership's rights.

30. Prior to his expulsion from the Partnership, BLOTZER commandeered the RATT Facebook page, including its database of fans on

Facebook, and used that page to promote his RATT cover band. As of the filing of this action, BLOTZER continues to operate a RATT Facebook page, using it communicate with RATT's database of fans to dispute Plaintiff's rights in the RATT Marks, to disparage Plaintiff, and to otherwise violate Plaintiff's rights.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – Against BLOTZER)

31. Plaintiff repeats, realleges and incorporates herein by reference as though fully set forth the allegations contained in the preceding paragraphs, inclusive, of this Complaint.

32. BLOTZER is in breach of the Agreement for conducting partnership business by touring as RATT and selling RATT merchandise or causing RATT merchandise to be sold between on or about September 2015 and November 2016 and failing, without justification, to account to the Partnership or his Partners for the profits from the touring and the merchandise.

33. Plaintiff performed all of the conditions and covenants it agreed to perform pursuant to the terms of the Agreements, except for those promises, conditions and covenants excused by the acts and omissions of Defendants.

34. As a direct and proximate result of the conduct of said Defendants, Plaintiff has sustained and will sustain general special and consequential damages in an amount not yet ascertained but within the jurisdiction of this Court.

## SECOND CLAIM FOR RELIEF
### (Trademark Counterfeiting and False Advertising Under 15 U.S.C. § 1114 - Against All Defendants, and Each)

35. Plaintiff repeats and re-alleges the preceding allegations of this Complaint as if set forth fully herein.

36. This is a claim for trademark counterfeiting and false advertising arising under 15 U.S.C. § 1114(a) and (b).

37. As set forth above Defendants have engaged in acts of direct infringement by the use of one or more of the Marks without Plaintiff's consent.

38. As set forth above, Defendants, and each of them, are directly liable for the direct acts of infringement committed by them.

39. Defendants have adopted and used in commerce Marks which are identical or are substantially indistinguishable from one or all of the Marks without Plaintiff's consent in a manner that infringes upon Plaintiff's rights in the Marks in violation of 15 U.S.C. § 1114(a).

40. Without Plaintiff's consent, Defendants use in commerce Marks which are identical or are substantially indistinguishable from one or all of the Marks in connection with the promotion, marketing, advertising of services in a manner which is likely to cause confusion, or to cause mistake, or to deceive.

41. Plaintiff is informed and believes, and thereon alleges, that Defendants acts alleged herein were done with actual knowledge of Plaintiff's ownership and prior use of the Marks, and with the intent to unfairly compete with Plaintiff, to trade upon Plaintiff's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants' services are associated with, sponsored by, originate from, or are approved by Plaintiff, when they are not.

42. Plaintiff is informed and believes, and thereon alleges, that Defendants acted willfully and intentionally to infringe of the Marks, directly and/or indirectly, in total disregard of Plaintiff's proprietary rights, and were done despite Defendants' knowledge that the use of the Marks was and is in direct contravention of Plaintiff's rights. At a minimum, Defendants acted with willful blindness or reckless disregard of Plaintiff's rights or the rights of the consuming public.

43. Plaintiff is informed and believes, and thereon alleges, that Defendants have derived and received, and will continue to derive and receive,

gains, profits, and advantages from the use of the Marks in an amount that is not presently known to Plaintiff. By reason of Defendants' actions, constituting unauthorized use of the Marks, Plaintiff has been damaged and is entitled to monetary relief in an amount to be determined at trial.

44. Due to Defendants' actions, constituting unauthorized use of the Marks, Plaintiff has suffered and continues to suffer great and irreparable injury, for which Plaintiff has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

**(Trademark Infringement Under 15 U.S.C. §§ 1114 and 1125(a) - Against All Defendants, and Each)**

45. Plaintiff repeats, realleges and incorporates herein by reference as though fully set forth the allegations contained in the preceding paragraphs, inclusive, of this Complaint.

46. Plaintiff is the owner of valid trademark rights in the Marks, which are strong, well known, and is entitled to a broad scope of protection.

47. Defendants have promoted and used in commerce identical or confusingly similar versions of one or more of the Marks without Plaintiff's consent in a manner that infringes upon Plaintiff's rights in the Marks in violation of 15 U.S.C. §§ 1114 and 1125(a).

48. At all relevant times Defendants have had actual knowledge of Plaintiff's ownership and prior use of the Marks, and have intended to unfairly compete with Plaintiff, to trade upon Plaintiff's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants are associated with, sponsored by, originate from, or are approved by Plaintiff, when they are not.

49. Defendants' activities constitute willful and intentional infringement of the Marks, directly and/or indirectly, in total disregard of Plaintiff's proprietary rights, and were done despite Defendant's knowledge that the use of the Marks was

and is in direct contravention of Plaintiff's rights. At a minimum, Defendants acted with willful blindness or reckless disregard of Plaintiff's rights or the rights of the consuming public.

50. Defendants have derived and received, and will continue to derive and receive, gains, profits, and advantages from the use of the Marks in an amount that is not presently known to Plaintiff. By reason of Defendants' actions, constituting unauthorized use of the Marks, Plaintiff has been damaged and is entitled to monetary relief in an amount to be determined at trial.

51. Due to Defendant's actions, constituting unauthorized use of the Marks, Plaintiff has suffered and continues to suffer great and irreparable injury, for which Plaintiff has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### (Federal Unfair Competition & False Designation of Origin Under 15 U.S.C. § 1125(a))

52. Plaintiff repeats, realleges and incorporates herein by reference as though fully set forth the allegations contained in the preceding paragraphs, inclusive, of this Complaint.

53. This is a claim for unfair competition and false designation of origin arising under 15 U.S.C. § 1125(a).

54. As set forth above Defendants have engaged in acts of direct infringement by the use of one or more of the Marks without Plaintiff's consent.

55. Defendants' direct and indirect use of the Marks without Plaintiff's consent constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods or commercial activities by another person in violation of 15 U.S.C. § 1125(a).

56. Defendants' direct and indirect use of the Marks without Plaintiff's consent constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods or commercial activities in violation of 15 U.S.C. § 1125(a).

57. Such conduct by Defendants is likely to confuse, mislead, and deceive members of the public as to the origin of Defendants' band and merchandise or cause said persons to believe that Defendants and/or their merchandise and services have been sponsored, approved, authorized, or licensed by Plaintiff or are in some way affiliated or connected with Plaintiff, when they are not, all in violation of 15 U.S.C. § 1125(a).

58. Upon information and belief, Defendants' actions were undertaken willfully with full knowledge of the falsity of such designation of origin and false descriptions or representations. At a minimum, Defendants acted with willful blindness or reckless disregard of Plaintiff's rights or the rights of the consuming public.

59. Defendants have derived and received, and will continue to derive and receive, gains, profits, and advantages from Defendants' false designation of origin, false or misleading statements, descriptions of fact, or false or misleading representations of fact in an amount that is not presently known to Plaintiff.

60. By reason of Defendants' actions, constituting false designation of origin, false or misleading statements, false or misleading descriptions of fact, or false or misleading representations of fact, Plaintiff has been damaged and is entitled to monetary relief in an amount to be determined at trial.

61. Due to Defendants' actions, constituting false designation of origin, false or misleading statements, false or misleading description of fact, or false or

misleading representations of fact, Plaintiff has suffered and continues to suffer great and irreparable injury, for which Plaintiff has no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
**(Contributory Trademark Infringement – Against BLOTZER, DOMAGALL, ARM and REILEY )**

62. Plaintiff repeats, realleges and incorporates herein by reference as though fully set forth the allegations contained in the preceding paragraphs, inclusive, of this Complaint.

63. The actions of Defendants BLOTZER, DOMAGALL, ARM and REILEY described above and specifically, without limitation, their knowledge, participation, and inducement of the unauthorized use of the Marks, and confusingly similar variations thereof, in commerce to advertise, market, and sell tickets for the BLOTZER-version of RATT throughout the United States and California, constitute contributory trademark infringement in violation of federal law and the common law of the State of California.

64. The actions of Defendants BLOTZER, DOMAGALL, ARM and REILEY, if not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the Marks, and injury to Plaintiff's business.

65. On information and belief, the actions of Defendants BLOTZER, DOMAGALL, ARM and REILEY described above were deliberate and willful.

### SIXTH CLAIM FOR RELIEF
**(Vicarious Trademark Infringement – Against BLOTZER)**

66. Plaintiff repeats, realleges and incorporates herein by reference as though fully set forth the allegations contained in the preceding paragraphs, inclusive, of this Complaint.

67. The actions of BLOTZER described above and specifically, without limitation, their knowledge, participation, and inducement of WBS' unauthorized use of the Marks, and confusingly similar variations thereof, in commerce to advertise, market, and sell tickets for the BLOTZER-version of RATT throughout the United States and California, constitute vicarious trademark infringement in violation of federal law and the common law of the State of California.

68. At all relevant times, BLOTZER was in sole control of WBS and derive direct financial benefit from the illegal acts of WBS.

69. The actions of BLOTZER if not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the Marks, and injury to Plaintiff's business.

70. On information and belief, the actions of BLOTZER described above were deliberate and willful.

## SEVENTH CLAIM FOR RELIEF

**(Declaratory Judgement Re Ownership of the RATT Marks)**

71. Plaintiff repeats, realleges and incorporates herein by reference as though fully set forth the allegations contained in the preceding paragraphs, inclusive, of this Complaint.

72. In 2015 WBS, Inc., filed suit against Croucier for, *inter alia*, trademark infringement in the Croucier Action and in 2016, WBS, Inc., filed suit against Pearcy for, *inter alia*, trademark infringement in the Pearcy Action.

73. Plaintiff is informed and believes, and thereon alleges, that BLOTZER caused both actions to filed and spearheaded those actions.

74. In each action, WBS alleged ownership of the Marks and in each action the District Court ruled that WBS could not establish ownership of the Marks or an ownership interest in the Marks.

75. Notwithstanding the judicial determinations that the Partnership, and not WBS, owns the RATT Marks, BLOTZER and WBS have continued to maintain that WBS is the sole owner, that the Partnership has no rights in the Marks, and that the matter is still being litigated (WBS has brought an appeal to the Ninth Circuit).

76. Due the perceived uncertainty of the ownership of the Marks by Facebook and BLOTZER's refusal to relinquish the RATT Facebook page he controls, Plaintiff requires a determination of its rights in the Marks such that it can assert exclusive control of the Marks on Facebook and other social media.

77. Plaintiff was not a party to the Croucier Action or the Pearcy Action.

78. An actual, present and justiciable controversy exists between Plaintiff on the one hand, and BLOTZER and WBS on the other hand, with respect to the ownership of the Marks.

79. Plaintiff seeks declaratory judgement from this Court that it is the owner of each of the Marks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1. Finding that Defendants have violated Section 43(a) of the Lanham Act (15 U.S.C. §§ 1114 and 1125(a)).

2. Granting an injunction permanently restraining and enjoining Defendants, their officers, agents, employees and attorneys, and all those persons or entities in active concert or participation with them, or any of them, from advertising, marketing, promoting, performing under, or otherwise using the Marks.

3. Directing that Defendants account to and pay over to Plaintiff all profits realized by their wrongful acts and directing that such profits be trebled in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117.

4. Awarding Plaintiff statutory damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117.

5. Awarding Plaintiff actual damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117.

6. Awarding Plaintiff costs and attorney's fees and investigatory fees and expenses to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117.

7. Requiring Defendants to deliver to Plaintiff for destruction or other disposition all remaining inventory or materials bearing the Marks, including all advertising, promotional and marketing materials therefor, as well as all means of making the same.

8. Declaring that Plaintiff owns the Marks, and each of them.

9. Awarding Plaintiff pre-judgment interest on any monetary award made part of the judgment against Defendants.

10. Awarding Plaintiff such additional and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

Dated: May 10, 2018  By: /s/ Stephen M. Doniger
Stephen M. Doniger, Esq.
David R. Shein, Esq.
DONIGER / BURROUGHS
Attorneys for Plaintiff